IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| H. P., a minor by her Father and Next Friend, Erik Parker, and ERIK PARKER, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | CASE NO. 3:21-cv-453 |
| TIFFANY KELLEY, in her individual capacity; CYNTHIA DRAEGE, in her Individual capacity, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Now come H. P., a minor by her Father and Next Friend, Erik Parker, and Erik Parker, by and through their attorneys, Jelliffe, Doerge & Phelps and Wiggins Law Firm LLC, and for their complaint against the defendants, Tiffany Kelley, in her individual capacity, and Cynthia Draege, in her individual capacity, state as follows:

### Jurisdiction and Venue

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, 42 U.S.C. §1983, and 42 U.S.C. §1988.

2. The acts complained of occurred in the Southern District of Illinois.

### Parties

3. Plaintiff, H. P., is a minor and a citizen of Illinois. H. P. brings this action by her Father and Next Friend, Erik Parker.

4. Plaintiff, Erik Parker (hereinafter "Erik"), is a citizen of Illinois.

5. Erik is the biological father and custodial parent of H. P.

6. At all times relevant herein, defendant, Tiffany Kelley (hereinafter "Kelley"), was a child protection specialist for the Illinois Department of Children and Family Services (hereinafter "DCFS").

7. Kelley is a citizen of Illinois.

8. Kelley is sued in her individual capacity.

9. At all times relevant herein, Kelley acted under color of state law.

10. At all times relevant herein, defendant, Cynthia Draege (hereinafter "Draege"), was a public service administrator for DCFS.

11. Draege is a citizen of Illinois.

12. Draege is sued in her individual capacity.

13. At all times relevant herein, Draege acted under color of state law.

## Allegations of Fact

14. At all times relevant herein, Erik financially and emotionally supported H. P., regularly exercised his visitation rights with her, and participated in the rearing of her.

15. On May 27, 2020, Erik picked up H. P. from her mother for his scheduled visitation.

16. Shortly after picking up H. P., Erik noticed a human bite mark on H. P.'s forearm.

17. Thereafter, Erik's father, at Erik's request, called Kelley and reported the bite mark.

18. Erik then took H. P. to Erik's primary care medical provider, Sherry Locey, PA-C, so she could examine the bite mark.

19. Thereafter, Kelley called Erik's father and said for Erik to not return H. P. to her mother but instead for him to take H. P. to Crossroads Hospital in Mt. Vernon, Illinois, to have the bite mark examined by medical personnel.

20. Kelley met Erik at Crossroads Hospital.

21. H. P.'s bite mark was examined by medical staff at Crossroads Hospital.

22. Kelley did not take H. P. into temporary custody.

23. Instead, Kelley told Erik to keep H. P. in his custody until further notice.

24. Erik kept H. P. overnight. Per the instructions of Kelley, Erik returned H. P. to her mother the next day on May 28, 2020.

25. On June 18, 2020, a petition for adjudication of wardship was filed in the Circuit Court of Wayne County, Illinois, case number 2020-JA-13.

26. Said petition was initiated by Kelley, filed at the request of Kelley, and verified by Kelley.

27. Kelley requested and verified the petition for adjudication of wardship in case number 2020-JA-13 even though she knew the following:

    a. Kelley did not have probable cause that H. P. faced an immediate threat of abuse by Erik;

    b.    Kelley had no evidence of urgent or immediate necessity of safety that required H. P.'s removal from the care and custody of Erik;

    c.    Kelley made no effort to offer services or assistance to Erik so as to prevent H. P.'s removal from his care and custody;

    d.    Kelley did not prepare a report or make a suggestion that Erik would be an appropriate person or agency into whose care H. P. should be placed in the event the judge decided that urgent and immediate removal from the mother was necessary.

28.    On June 18, 2020, a shelter care hearing was held on the petition for adjudication of wardship.

29.    Erik was not served notice of the shelter care hearing in compliance with state law.

30.    During the shelter care hearing, the following occurred:

    a.    The court failed to state for the record the manner in which the parties, including Erik, received service of process, in violation of 705 ILCS 405/2-21;

    b.    The court failed to hear evidence of whether H. P. was abused, neglected, or dependent, in violation of 705 ILCS 405/2-21;

  c. The court failed to put in writing the factual basis supporting its determination that H. P. was abused or neglected, in violation of 705 ILCS 405/2-21;

  d. The court failed to put in writing the specific acts of each parent that formed the basis of the court's finding that H. P. was abused or neglected, in violation of 705 ILCS 405/2-21;

  e. The court failed to establish a factual basis for probable cause that H. P. faced an immediate threat of abuse by Erik;

  f. The court failed to establish a factual basis of urgent or immediate necessity of safety that required H. P.'s removal from the care and custody of Erik;

  g. The court failed to establish that Erik was provided proper notice of the shelter care hearing.

  h. Erik was coerced into consenting to H. P.'s temporary placement with a family member during an off-the-record meeting with Kelley and Wayne County State's Attorney, Kevin Kakac (hereinafter "Kakac"), in that Erik was told if he did not consent to the temporary placement with a family member then H. P. may be placed in foster care with a non-family member;

   i. During said off-the-record meeting with Kelly and Kakac, Erik was manipulated into consenting to H. P.'s temporary placement with a family member in that Erik was led to believe that his only options were 1) temporary placement with a family member; or 2) H. P. being placed in foster care with a non-family member;

   j. During said off-the-record meeting with Kelly and Kakac, Erik was manipulated into consenting to H. P.'s temporary placement with a family member in that Erik was not told if he proceeded with the shelter care hearing that he might be awarded temporary custody of H. P.;

   k. The court failed to inquire and find that Erik's consent to the temporary placement agreement was free and voluntary and not due to coercion, manipulation, or made under duress.

31. At the conclusion of the shelter care hearing, H. P. was adjudged a ward of the court and placed in the custody of a member of her maternal family.

32. Erik was not allowed to see or visit H. P. from June 18, 2020, through July 21, 2020.

33. On July 21, 2020, a status hearing was held in case number 2020-JA-13. A pretrial hearing was scheduled for September 1, 2020. H. P. remained in the custody of a member of her maternal family.

34. Thereafter, Erik retained counsel and filed a motion to place H. P. in his care and dismiss case number 2020-JA-13. The basis of the motion was (1) H. P. was in her mother's care when the human bite occurred; (2) Erik was never suspected of causing H. P.'s injury; (3) the state did not have the immediate and urgent necessity to take H. P. into its care and custody; and (4) the state did not have the immediate and urgent necessity to place H. P. outside the care and custody of her father, Erik.

35. At all times relevant herein, the state and Kelley knew the allegations contained in Erik's motion were true and correct.

36. On September 10, 2020, a hearing was held on Erik's motion. His motion was granted. DCFS was discharged of the custody and guardianship of H. P. and she was placed in the care and custody of Erik.

37. During the time period of July 22, 2020, through September 11, 2020, Erik had minimal and sporadic supervised visitation with H. P.

38. At no time during the time period of June 18, 2020, through September 11, 2020, did Kelley have probable cause to continue to hold H. P. in temporary protective custody.

39. At no time during the time period of June 18, 2020, through September 11, 2020, did Kelley have probable cause to continue to prevent Erik from having the care and custody of H. P.

40. At all times relevant herein, Draege was Kelley's supervisor at DCFS.

41. Kelley's conduct and actions as alleged herein were directed by Draege and/or Kelley's conduct and actions as alleged herein were performed with Draege's knowledge and consent.

### Violation of Procedural Due Process Rights
### Secured by the Fourteenth Amendment

42. Plaintiffs incorporate by reference all preceding allegations as if fully set forth herein.

43. The Fourteenth Amendment of the United States Constitution provides that no state shall deprive any person of life, liberty, or property, without due process of law.

44. H. P. has a constitutionally protected right of familial relations and to live with her father without government interference.

45. Erik has a constitutionally protected right of familial relations and to live with his daughter without government interference.

46. Kelley and Draege, acting under color of law, caused Erik's and H. P.'s deprivation of their familial relations.

47. As a result of Kelley's and Draege's actions described herein, Erik and H. P. were denied procedural due process.

48. Kelley's and Draege's actions in depriving Erik and H. P. of their procedural due process rights exhibited a reckless indifference to the constitutional rights of Erik and H. P.

49. As a result of Kelley's and Draege's actions, Erik and H. P. suffered emotional and mental distress and other injuries and damages.

**Violation of Substantive Due Process Rights
Secured by the Fourteenth Amendment**

50.   Plaintiffs incorporate by reference all preceding allegations as if fully set forth herein.

51.   The Fourteenth Amendment of the United States Constitution protects fundamental liberty interests against certain state intrusions irrespective of the fairness of the procedures utilized.  This substantive guarantee is intended to prevent state actors from using their power in an abusive or oppressive manner.

52.   Kelley and Draege, acting under color of law, violated Erik's and H. P.'s substantive due process rights by depriving them of their constitutionally protected right of familial relations and to live together without government interference.

53.   Kelley's and Draege's actions in depriving Erik and H. P. of familial relations exhibited a reckless indifference to the constitutional rights of Erik and H. P.

54.   As a result of Kelley's and Draege's actions, Erik and H. P. suffered emotional and mental distress and other injuries and damages.

**Violation of Fourth Amendment Right Against Unreasonable
Seizure Secured by the Fourteenth Amendment**

55.   Plaintiffs incorporate by reference all preceding allegations as if fully set forth herein.

56.   The Fourth and Fourteenth Amendments of the United States Constitution protects an individual from unreasonable seizure by the state

57. H. P.'s removal from the care and custody of Erik and her temporary custody placement was a seizure as contemplated by the Fourth and Fourteenth Amendments of the United States Constitution.

58. H. P.'s seizure was caused by the actions of Kelley and Draege, acting under color of law.

59. H. P.'s seizure was unreasonable in that at no time did Kelley or Draege (1) have probable cause that H. P. faced an immediate threat of abuse by Erik; or (2) have evidence of urgent or immediate necessity of safety that required H. P.'s removal from the care and custody of Erik.

60. Kelley's and Draege's actions resulting in the seizure of H. P. exhibited a reckless indifference to the constitutional rights of H. P.

61. As a result of Kelley's and Draege's actions, H. P. suffered emotional and mental distress and other injuries and damages.

### Request for Relief

WHEREFORE, plaintiffs respectfully request that the Court:

62. Declare defendants' actions are violations of the Fourth and Fourteenth Amendments to the United States Constitution;

63. Award compensatory damages against each of the defendants sued in his or her individual capacity;

64. Award punitive damages against each of the defendants sued in his or her individual capacity and proven to have acted with reckless indifference to the plaintiffs' constitutional rights;

65. Award the plaintiffs' attorneys' fees and costs pursuant to 42 U.S.C. §1988; and

66. Grant any other relief the Court deems necessary and proper.

## Demand for Jury Trial

67. The plaintiffs respectfully request a jury trial.

          JELLIFFE, DOERGE & PHELPS

          BY: /s/ Kelly R. Phelps
               Kelly R. Phelps, ARDC №. 6230044
               108 East Walnut Street
               Harrisburg, Illinois 62946
               Telephone:  618-253-7153
               krp@jdplawfirm.net

          WIGGINS LAW, LLC
          BY: /s/ Letitia B. Wiggins
               Letitia B. Wiggins, ARDC №. 6315836
               301 S. Jackson St.
               McLeansboro, IL  62859
               Telephone:  618-643-4488
               wiggins@wigginslawllc.legal

Attorneys for Plaintiffs