**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **H.P., a minor by her Father and Next, Friend, Erik Parker, and ERIK PARKER,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **Case No. 21-cv-453-DWD** |
| **TIFFANY KELLEY, and CYNTHIA DRAEGE,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

**DUGAN, District Judge:**

Plaintiffs, H.P, a minor, by her father and next friend Erik Parker, and her father, Erik Parker, filed this civil rights complaint pursuant to 42 U.S.C. §§ 1983 and 1988 against Defendants Tiffany Kelley and Cynthia Draege for alleged violations of Plaintiffs' procedural and substantive due process rights, and H.P.'s Fourth Amendment rights (Doc. 1). Now before the Court is Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**The Complaint**

Plaintiffs allege the following facts, which for the purposes of this motion are taken as true. *Hishhon v. King & Spaulding*, 467 U.S. 69, 73 (1984). Parker is the biological father and custodial parent of H.P., a minor (Doc. 1, ¶¶ 1, 5). Kelley is a child protection specialist for the Illinois Department of Children and Family Services ("DCFS") (Doc. 1, ¶ 6). Draege is a public service administrator for DCFS (Doc. 1, ¶ 10) and Kelley's

supervisor (Doc. 1, ¶ 40). At all times relevant to the complaint, Draege directed or consented to Kelley's actions (Doc. 1, ¶ 41). Plaintiffs are suing both Defendants in their individual capacities (Doc. 1, ¶¶ 8, 12).

On May 27, 2020, Parker noticed a human bite mark on H.P.'s forearm after picking her up from her mother's house (Doc. 1, ¶¶ 15-16). Parker relayed this information to Kelley, who requested that Parker take H.P. to a hospital to have the bite mark examined (Doc. 1, ¶¶ 17-19). Kelley met Parker and H.P. at the hospital and told Parker to keep H.P in his custody until further notice (Doc. 1, ¶¶ 20, 23). Parker kept H.P. overnight, but at the request of Kelley, he returned H.P. to her mother the next day on May 28, 2020 (Doc. 1, ¶ 24).

On June 18, 2020, Kelley verified a petition for adjudication of wardship in the Circuit Court of Wayne County, Illinois (Case No. 2020-JA-13) (Doc. 1, ¶¶ 25-27), and the state court held a shelter care hearing on the petition (Doc. 1, ¶ 28). Parker was not served with notice of the shelter care hearing but was present at the hearing (Doc. 1, ¶ 29). At the conclusion of the hearing, H.P. was adjudged a ward of the court and placed in the custody of her maternal family (Doc. 1, ¶ 31). Parker was not allowed to see or visit H.P. from June 18, 2020 to July 21, 2020 (Doc. 1, ¶ 32). From July 22, 2020 through September 11, 2020, Parker had minimal and sporadic supervised visitation with H.P. (Doc. 1, ¶ 37). Parker retained legal counsel and filed a motion to place H.P. into his care (Doc. 1, ¶ 34). On September 10, 2020, the state court granted Parker's motion, discharged DCFS of custody and guardianship of H.P., and placed H.P in Parker's custody (Doc. 1, ¶ 36).

Among other grievances, Plaintiffs allege that Kelley lacked probable cause to have a petition for wardship filed against Parker on June 18, 2020 (Doc. 1, ¶¶ 27, 40). They also allege multiple procedural deficiencies with the June 18th shelter care hearing. Specifically, Plaintiffs state that:

> a. The court failed to state for the record the manner in which the parties, including Parker, received service of process, in violation of 705 ILCS 405/2-21;
>
> b. The court failed to hear evidence of whether H. P. was abused, neglected, or dependent, in violation of 705 ILCS 405/2-21;
>
> c. The court failed to put in writing the factual basis supporting its determination that H. P. was abused or neglected, in violation of 705 ILCS 405/2-21;
>
> d. The court failed to put in writing the specific acts of each parent that formed the basis of the court's finding that H. P. was abused or neglected, in violation of 705 ILCS 405/2-21;
>
> e. The court failed to establish a factual basis for probable cause that H. P. faced an immediate threat of abuse by Parker;
>
> f. The court failed to establish a factual basis of urgent or immediate necessity of safety that required H. P.'s removal from the care and custody of Parker;
>
> g. The court failed to establish that Parker was provided proper notice of the shelter care hearing;
>
> h. Parker was coerced into consenting to H. P.'s temporary placement with a family member during an off-the-record meeting with Kelley and Wayne County State's Attorney, Kevin Kakac (hereinafter "Kakac"), in that Parker was told if he did not consent to the temporary placement with a family member then H. P. may be placed in foster care with a non-family member;
>
> i. During said off-the-record meeting with Kelley and Kakac, Parker was manipulated into consenting to H. P.'s temporary placement with a family member in that Parker was led to believe that his only options were

1) temporary placement with a family member; or 2) H. P. being placed in foster care with a non-family member;

j. During said off-the-record meeting with Kelley and Kakac, Parker was manipulated into consenting to H. P.'s temporary placement with a family member in that Parker was not told if he proceeded with the shelter care hearing that he might be awarded temporary custody of H. P.;

k. The court failed to inquire and find that Parker's consent to the temporary placement agreement was free and voluntary and not due to coercion, manipulation, or made under duress.

(Doc. 1, ¶ 30).

Plaintiffs assert procedural and substantive due process claims under the Fourteenth Amendment (Doc. 1, ¶¶ 42-49, 50-54), and H.P. asserts a violation of her Fourth and Fourteenth Amendment rights (Doc. 1, ¶¶ 57-61). Plaintiffs seek compensatory and punitive damages, along with attorneys' fees and costs (Doc. 1, ¶¶ 62-66).

Defendants now seek to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argue that the complaint is barred by issue preclusion. Defendants further contend that Plaintiffs' procedural due process claims should be dismissed because Plaintiffs received all due process required as a result of the state's court adjudication hearing, and that Plaintiffs' substantive due process claims, and H.P.'s Fourth Amendment claims should be dismissed because the state court found probable cause that H.P. had been abused, and her seizure was pursuant to a court order. Finally, Defendant Draege argues that the claims against her should be dismissed because the Complaint failed to allege any personal wrongdoing on her part.

Plaintiffs respond arguing that their claims are not barred by issue preclusion because they question the integrity of the evidence the state court relied on to establish probable cause to remove H.P. Plaintiffs also argue that the shelter care hearing was unfair due to Defendants' actions to manipulate Parker into consenting to H.P.'s temporary placement despite knowing that Parker was never suspected of causing H.P.'s injuries and the allegations in the petition for wardship were not true.

**Discussion**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (internal quotations and citation omitted); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in Plaintiffs' favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014). Dismissal is only appropriate if Plaintiffs are "unable to present any set of facts consistent with the complaint which would entitle [them] to recover." *Brokaw v. Mercer County,* 235 F.3d 1000, 1009 (7th Cir. 2000).

To state a claim under § 1983, plaintiffs must allege that defendants deprived them of a right secured by the Constitution or laws of the United States, and that defendants acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Brokaw*, 235 F.3d at 1009. Here, Plaintiffs allege that Defendants violated their rights to procedural due process by denying them fair and constitutionally adequate process both before and after H.P.'s removal from Parker's custody. Plaintiffs also contend that Defendants violated their substantive due process right to familial relations. H.P. separately asserts that Defendants violated her Fourth Amendment rights by removing her from Parker's care without probable cause.

***A. Procedural Due Process***

The Fourteenth Amendment protects against the deprivation of constitutionally protected interests without due process of law. *Brokaw*, 235 F.3d at 1020 (citing *Doe by Nelson v. Milwaukee County*, 903 F.2d 499, 502 (7th Cir. 1999)). The purpose of procedural due process is to guarantee individuals "fair decision making processes" before state actors deprive them of life, liberty, or property. *Gauder v. Leckrone*, 366 F.Supp.2d 780, 789 (W.D. Wis. 2005). "It is unconcerned with outcomes; as long as fair decision making processes are offered, procedural due process has been provided." *Id.* Due process claims are subject to a two-part inquiry. First, the Court must determine whether plaintiffs were deprived of a protected liberty or property interest, and, if so, the Court must then decide what process was due. *Brokaw*, 235 F.3d at 1020; *see also Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016).

Plaintiffs allege a deprivation of their right to familial relations, which is a protected liberty interest. *Brokaw*, 235 F.3d at 1020 (citing *Santosky v. Kramer,* 455 U.S. 745, 753 (1982); *Stanley v. Illinois*, 405 U.S. 645, 651–52 (1972))). In considering what process is due for the deprivation of this liberty interest, the Seventh Circuit has reasoned that both parental rights, and a child's right to be nurtured by his parents cannot be denied "without an opportunity to be heard in a meaningful way." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). The amount of due process required varies with the particular situation and is a "flexible" concept. However, at minimum, due process here "requires that government officials not misrepresent the facts in order to obtain the removal of a child from his parents." *Id.*; *see also Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 484 (7th Cir. 2011) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.").

Plaintiffs allege that that they were not afforded sufficient process at the shelter care hearing because Defendants misrepresented Parker's involvement in H.P.'s injuries. Specifically, Plaintiffs allege that Kelley was aware that H.P.'s injury occurred while at her mother's house and not while in Parker's custody, that Kelley was informed of the injury by Parker, that Parker had H.P. evaluated by medical professionals, and that Kelley had instructed Parker to keep H.P. in his custody immediately after her injuries were discovered. Even though Kelley was personally aware of these exculpatory facts, the verified petition for wardship she filed did not indicate that H.P.'s injuries had not occurred while in Parker's care. Moreover, Plaintiffs allege that Parker was manipulated into consenting to H.P.'s removal at the shelter care hearing, and essentially prohibited

from participating in the hearing because Kelley threatened to have H.P. placed into foster care instead of placed with a family member if temporary custody was granted. These allegations sufficiently plead a Fourteenth Amendment procedural due process violation.

Nevertheless, Defendants argue that Plaintiffs' procedural due process claims should be dismissed because the state court's findings in its temporary shelter care order preclude Plaintiffs' claims and because Plaintiffs were afforded all required process at the shelter care hearing on June 18, 2020. "Issue preclusion prevents a party from relitigating an issue that it has previously litigated and lost." *Jensen v. Foley*, 295 F.3d 745, 748-49 (7th Cir. 2002) (internal citations omitted) (citing *Donald v. Polk County*, 836 F.2d 376, 284-85 (7th Cir. 1988). Here, the Court looks to the preclusion law of Illinois. *Id.*, at 748. Under Illinois law, issue preclusion applies if: (1) the issue decided in the prior adjudication is identical to the issue presented in the present suit; (2) a final judgment was entered on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party to or in privity with a party to the prior adjudication." *Altman v. Dept. of Children & Family Servs.*, 666 F.Supp. 918, 926 (S.D. Ill. 2009) (citing *Gumma v. White*, 216 Ill.2d 23, 833 N.E.2d 834, 843 (Ill. 2005)); *see also Jensen*, 295 F.3d at 748 (citing *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 757 N.E. 2d 471 (Ill. 2001)).

To decide whether issue preclusion applies here, the Court must initially determine whether the procedural due process issues were previously litigated. At H.P.'s temporary shelter care hearing, the state court made the following findings before ordering H.P.'s removal: (1) that probable cause existed to believe H.P. was neglected or

abused, (2) that it was a matter of immediate and urgent necessity that H.P. be placed in a shelter care facility, and (3) that reasonable efforts have been made or good cause has been shown why reasonable efforts cannot prevent or eliminate the necessity of H.P.'s removal (Doc. 19-1).[1] In reviewing the state court's order (Doc. 19-1), the order does not detail any written findings concerning the adequacy or fairness of the shelter care hearing. Nor does the order specify whether the state court considered whether Defendants' initial investigation complied with due process or whether Parker's signature on the order showed affirmative consent to H.P.'s removal. Finally, the order does not articulate what evidence the state court relied on in making its findings in support of temporary wardship. In sum, at this stage in the proceedings there is no indication that the due process concerns alleged by Plaintiffs in their complaint were actually adjudicated at the shelter care hearing.

Moreover, issue preclusion does not generally bar claims when plaintiffs challenge a defendant's intentional misrepresentation or concealment of material facts. *See CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 856 ("Illinois law denies collateral estoppel to a finding not made on the basis of a fair and adequate hearing."); *Extra Equipamentos E Exportacao Ltda. V. Case Corp.*, 361 F.3d 359, 363 (7th Cir. 2004) (issue preclusion will not apply to a judicial finding if the finding was not reached after a full

[1]Although the state court's order (Doc. 19-1) and the petition for wardship (Doc. 19-2) are not attached to Plaintiffs' Complaint, the Court may nonetheless consider them in ruling on Defendants' motion to dismiss because the documents are referenced in the Complaint and central to Plaintiffs' claims. *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018). Moreover, a district court may take judicial notice of matters of public record outside the pleadings without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

and fair hearing). The allegations in the complaint sufficiently question the integrity of the evidence (or lack thereof) that was presented at the shelter care hearing, and further present a plausible claim that Plaintiffs were prevented from meaningfully participating in the hearing such that this claim survives dismissal. *See Brokaw*, 265 F.3d at 1021 ("[S]ham procedures do not satisfy due process.") (internal citations and quotations omitted); *cf. Hernandez*, 657 F.3d at 486 (holding that a state official may not misrepresent facts to obtain a child's removal).

**Substantive Due Process**

Unlike procedural due process, substantive due process "is concerned with the results of government action. *Gauder*, 366 F.Supp.2d at 786 (*citing Miller v. Henman*, 804 F.2d 421, 427 (7th Cir.1986)). "Rather than guaranteeing an individual the right to a fair decision making procedure, the concept of substantive due process prevents the state from taking certain actions even if it provides procedural safeguards." *Id.* In other words, it protects citizens from government conduct that is "arbitrary or without reasonable justification." *Id.* (*citing Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir.2005)).

Plaintiffs assert substantive due process claims based on Defendants' infringement of their familial rights. *See Hernandez*, 657 F.3d at 478 (citing *Heck*, 327 F.3d at 524) ("A family's right 'to remain together without coercive interference of the awesome power of the state' is 'the most essential and basic aspect of familial privacy.'") (internal citations omitted). This right is an aspect of substantive due process and includes the parents' right "to bear and raise their children" and the child's right "to be raised and nurtured by his parents." *Id.* (internal citations and quotations omitted). However, this right is not

absolute, and "must be balanced against the state's interest in protecting children from abuse." *Id.* To achieve this balance, "caseworkers must have 'some definite and articulable evidence giving rise to a reasonable suspicion' of past or imminent danger of abuse before they may take a child into protective custody." *Id.* (internal citations and quotations omitted); *see also Croft*, 103 F.3d at 1126; *Brokaw*, 235 F.3d at 1019 ("a state has no interest in protecting children from parents unless it has some definite and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse.").

According to the complaint, Defendants never had probable cause[2] of child abuse or neglect *caused by Parker* to justify removing H.P. from Parker's care on June 18, 2020, nor anytime thereafter when he was denied visitation rights, and later limited to supervised visitation.[3] Plaintiffs allege that Kelley lacked probable cause because she knew H.P.'s injury occurred at her mother's house, and not while in Parker's custody. The complaint further provides that Parker reported the injury to Kelley and that Kelley did not have any evidence of possible child abuse or neglect inflicted by Parker. Plaintiffs therefore challenge the evidence underlying both Defendants' seeking temporary protective custody of H.P. *and* H.P.'s continued withholding for three months. "The

[2] Although the relevant constitutional standard is reasonable suspicion, because reasonable suspicion is a less demanding standard than probable cause, the state court's determination that probable cause existed would encompass reasonable suspicion as well. *See Xiong v. Wagner*, 700 F.3d 282, 291 (7th Cir. 2012) ("To qualify as a reasonable suspicion, caseworkers must have more than a hunch but less than probable cause.") (internal quotations omitted).

[3] Parker was not allowed to see or visit H.P. from June 18, 2020 to July 21, 2020 (Doc. 1, ¶ 32). Parker had minimal and sporadic supervised visitation with H.P. from July 22, 2020 through September 11, 2020 (Doc. 1, ¶ 37).

continued withholding of a minor may constitute a constitutional violation where probable cause or reasonable suspicion dissipates." *See Xiong v. Wagner*, 700 F.3d 282, 291; *Hernandez*, 657 F.3d at 478; *Heck*, 327 F.3d at 518 n.23.

Preliminarily, the Court must address whether H.P.'s claims here are properly analyzed as a substantive due process claim. "[S]ubstantive due process should not be called upon when a specific constitutional provision protects the right allegedly infringed upon." *Brokaw*, 235 F.3d at 1017-18 (citing *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). As such, the Seventh Circuit has reasoned that a child's injuries premised on their initial removal or seizure from their family and home should be considered under the Fourth Amendment. *Id.*; *see also Hernandez*, 657 F.3d at 474 (citing *Doe v. Heck*, 327 F.3d 492, 518 n.23 (7th Cir. 2003) (a child's constitutional claim premised on his seizure is analyzed under the Fourth Amendment rather than substantive due process). Her continuing holding claim may also be analyzed under the Fourth Amendment. *See Hernandez*, 657 F.3d at 474 (citing *Heck*, 327 F.3d at 518 n.23) (When the harm alleged by a minor's continuing withholding is no different than the harm caused by his initial removal, and only present because of the passage of time, the continued withholding claim is aptly analyzed under the Fourth Amendment).

Here, H.P.'s claims are analogous to those in *Hernandez*. Therefore, the Court will analyze her claims – based both on her initial removal in June 2020 and her continuing separation from Parker – under the Fourth Amendment. Parker's claims, however, are both properly analyzed as a substantive due process claim. *Xiong*, 700 F.3d at 291; *Hernandez*, 657 F.3d at 480. Nonetheless, for the purposes of determining the sufficiency

of these claims, the Court will consider the claims together and differentiate where needed because whether H.P.'s claim is analyzed under the Fourth Amendment or substantive due process, the result is the same.[4]

Defendants again argue that Plaintiffs' claims are barred by issue preclusion because the state court found probable cause that H.P. had been abused, and therefore her seizure was pursuant to a court order. Indeed, the state court did find that probable cause justified H.P.'s temporary removal from Parker in its June 2020 order (Doc. 19-1). This is a critical element to Plaintiffs' claims, and Plaintiffs' contrary allegations now that probable cause did not exist at the time of H.P.'s initial removal poses a direct challenge to the state court's finding. It is not this Court's role to question that determination by entertaining a § 1983 claim based on a contrary assertion. *See Jensen*, 295 F.3d at 748. However, a judicial finding will only be given collateral estoppel effect if it is reached "after a full and fair hearing." *Extra Equipamentos*, 361 F.3d at 363. As Plaintiffs allege that their rights to a full and free hearing were obstructed by Defendants, these allegations are enough to survive dismissal at this stage. While additional discovery and

[4] Just as "substantive due process does not categorically bar the government from altering parental custody rights", the Fourth Amendment right to be free government seizure is not absolute. *Brokaw*, at 1019 (reasoning that the same legal standards apply in evaluating Fourth and Fourteenth Amendment claims for the removal of children). The Fourth Amendment, incorporated by the Fourteenth Amendment, provides that "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated." *Brokaw*, at 1009-1010 (internal citations and markings omitted). To sustain a Fourth Amendment claim, Defendants' removal of H.P. from Parker and her home must constitute an unreasonable seizure. *Id.* at 1010. Here, H.P. has alleged a seizure within the meaning of the Fourth Amendment, because Defendants removed her from her home such that "a reasonable person would have believed [s]he was not free to leave." *Id.* She has further alleged that the seizure was unreasonable because she claims it was not supported by probable cause. *See Id.* (whether or not a seizure is reasonable depends on whether the seizure was "pursuant to a court order, . . . supported by probable cause, or if it was justified by exigent circumstances.") (internal citations omitted). Therefore, both H.P.'s Fourth Amendment claim and Parker's substantive due process claim rise and fall with the question of probable cause.

facts may reveal that Plaintiffs had a full and fair opportunity to litigate the probable cause issue at the shelter care hearing, that question is more appropriate for summary judgment.

Moreover, Plaintiffs also assert a continuing withholding claim by alleging that probable cause did not exist for the entire three-month period H.P. was separated from Parker. Accordingly, these allegations support an inference that at some time following the June 2020 hearing, Defendants no longer had reasonable suspicion that H.P. had been abused or was in imminent danger of abuse by Parker such that a reasonable officer would recognize that their conduct transgressed Plaintiffs' constitutional rights. Plaintiffs' allegations are therefore sufficient to state a substantive due process and Fourth Amendment claim. *See Brokaw*, 265 F.3d at 1021.

Accordingly, Parker's substantive due process claims and H.P.'s Fourth Amendment claim survive dismissal. Because H.P.'s Fourth Amendment Claim subsumes her substantive due process claim in Count 2, that claim will be dismissed, without prejudice.

**Individual Liability**

Lastly, Defendant Draege argues that the claims against her should be dismissed because Plaintiffs have not alleged sufficient individual liability. In order to establish liability under § 1983, a plaintiff must prove that the defendant was personally responsible for the deprivation of the constitutional right in question. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) (noting that "[a]n *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.")

(emphasis in original). Additionally, "to establish a claim against a supervisory official, there must be a showing that the official knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act." *Id.* at 274 (citing *Smith v. Rowe*, 761 F.2d 360 (7th Cir. 1985)). Supervisor liability attaches "where a supervisor, with knowledge of a subordinate's conduct, approves of the conduct and the basis for it." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1182 (7th Cir. 1994). In other words, "[t]he supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

Apart from vague conclusions in the Complaint that Draege "directed or consented to Kelley's actions" during the relevant time period (Doc. 1, ¶ 41), Plaintiffs do not otherwise plead facts to support this conclusion. Plaintiffs have merely recited the elements of supervisory liability and have not alleged any factual details so to infer that Draege did direct or consent to Kelley's here. Accordingly, Plaintiffs have not sufficiently plead Draege's individual liability so to sustain their claims against her. *See Twombly*, 550 U.S. at 555. As such, the claims against Defendant Draege will be **DISMISSED, without prejudice**.

## Conclusion

For the above stated reasons, Defendant's Motion to Dismiss is **GRANTED, in part, and DENIED, in part.** H.P. and Parker's procedural due process claims, Parker's substantive due process claim, and H.P.'s Fourth Amendment claim survive dismissal. Because H.P.'s substantive due process claim is subsumed by her

Fourth Amendment claim, H.P.'s substantive due process claim is **DISMISSED, without prejudice.**

Further, the claims against Defendant Draege are **DISMISSED, without prejudice**, for a failure to state a claim.

Defendants are **DIRECTED** to file an Answer to the Complaint by **March 4, 2022**.

**SO ORDERED.**

Dated: February 18, 2022

DAVID W. DUGAN
United States District Judge